FILED

2005 Aug-11  PM 04:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AAL HIGH YIELD BOND FUND and DELAWARE DELCHESTER FUND, a series of Delaware Group Income Funds and formerly a series of Delaware Group Income Funds, Inc., individually and on behalf of all others similarly situated,** ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, ) ) ) | |
| **vs.** ) ) | **Civil Action Number** 2:00-cv-1404-UWC |
| **HAROLD RUTTENBERG, RANDALL L. HAINES, DELOITTE & TOUCHE, LLP, and BANC OF AMERICA SECURITIES LLC, f/k/a NATIONSBANC MONTGOMERY SECURITIES LLC, on behalf of itself and a class of underwriters,** ) ) ) ) ) ) ) ) ) ) | |
| Defendants. ) | |

**CLASS CERTIFICATION OPINION**

In this securities action, the named Plaintiffs have moved for certification of

a plaintiff class and a defendant class, pursuant to Fed. R. Civ. P. 23(b)(3). (Doc.

1

215.)  For the reasons that follow, the Court finds and concludes that a plaintiff class is due to be certified on the claims brought under Section 10(b) of the 1935 Securities Act and Securities and Exchange Commission ("SEC") Rule 10(b)(5), as well as the claims of a subclass of primary investors brought under § 12(a)2 of the Securities Act of 1933.  In all other respects, the class certification motion is due to be denied.

## I. The Relevant Facts

Named Plaintiffs, AAL High Yield Bond Fund and Delaware Delchester Fund (collectively, "Plaintiffs"), filed this putative class action against shoe retailer, Just for Feet, Inc. ("JFF"); its independent auditor, Deloitte & Touche; its lead underwriter, Banc of America Securities ("BAS"); Harold Ruttenberg, Chairman of the Board of Directors ("the Board"), President , Chief Executive Officer ("CEO"), and the major stockholder of JFF; and  Randall L. Haines, Director, member of the Board's Audit Committee, and President of Compass Bank - one of JFF's principal lenders during the relevant period.

Plaintiffs are institutional investors who purchased high-yield corporate debentures or  "Notes" - i.e., "junk bonds," issued by JFF on or about April 12,

1999.[1]  The Notes offering was not registered with the SEC, purportedly based on its

exempt status as a private offering to qualified institutional investors.

    Plaintiffs allege that the Notes contained false and misleading financial

---

[1]  The Court makes the following findings concerning the operation of the high yield bond market. In so doing, the Court relies extensively on the opinions of James A. Mullin, Plaintiff's expert.

    The bond rating agencies publish their public financial criteria for the various rating levels; therefore, an underwriter can have some idea of what rating will emerge from the process. The issuer of the bonds submits an application to the rating agencies, often making a presentation to them. The rating agencies then rate the proposed high yield bond offering.  The rating agencies are totally disinterested in the process.

    The rating itself establishes a band for pricing the proposed high-yield bond offering. The band increases somewhat towards the lower end of the high yield ratings.  To the extent that there are variations between coupons of similarly rated bonds at similar times, those differences occur principally as a result of supply and demand factors for a particular issue.

    Information on supply and demand for the proposed offering is obtained through "road shows," at which the company meets with potential investors and representatives of the underwriters.   Information is also obtained during the "indication of interest" process, whereby salespersons acting on behalf of the underwriters solicit from their clients an indication of the quantity a client would be willing to purchase at a given coupon.  These two processes effectively set the pricing within a band for a bond of a given rating.  This rating is in the exclusive control of the bond rating agency.

    It is the practice in the industry for institutional salespersons of the underwriters to deliver a preliminary disclosure statement to potential investors.  Thereafter, the Offering Memorandum is delivered in the same manner and extent as an initial public offering of equities, which means that they are delivered with the offering itself and sometimes as long as ninety days thereafter.

    The reputation of underwriters depends somewhat on the quality of their due diligence. Where an underwriter buys back a large volume of high yields bonds which it has underwritten, one may infer the underwriter's consciousness of problems with the offering, and a lack of due diligence on its part.

(R. 157, 2d Sealed Joffe Aff. at Tab 1, Mullin Decl.)

statements which, among other things, overstated revenues, understated expenses, and failed to account for over $50 million in obsolete and outdated inventory.  Plaintiffs claim that but for the fraud, the Notes would have not come to the market, and that the Notes were worthless at the time they were sold.   Plaintiffs further allege that after the initial offering, Defendants continued to disseminate false and misleading statements concerning the Notes until JFF filed for bankruptcy in November of 1999.

In their Amended Complaint,[2]  Plaintiffs maintain that the actions of Defendants violated Sections 12(a)(1), 12(a)(2) and 15 of the Securities Act of 1933; Section 10 (b) of the Securities Exchange Act of 1934, and Rule 10b-5 promulgated thereunder.   Plaintiffs also allege that the Defendants committed fraud under Alabama law. (Compl. §§ 266-303.)  According to Plaintiffs, the Defendants' fraud 1) "created the market" in which some of them purchased the Notes in the initial offering, and 2) caused  "fraud on the market" as to those Plaintiffs who thereafter purchased the Notes in the secondary market at inflated prices.

The Plaintiffs and class members have settled their claims against all of the named Defendants, with the exception of Defendant BAS.

As to remaining Defendant BAS, Plaintiffs allege that BAS knew of JFF's

---

[2] This action was initially filed on May 25, 2000. The named Plaintiffs filed an Amended Complaint on November 14, 2001.

accounting irregularities as  a consequence of its due diligence investigation, but nonetheless allowed the Note Offering to proceed.  Plaintiffs contend that BAS held itself out to prospective investors as the source of verification of the information contained in the Offering Memorandum, and that it was the guarantor of the veracity of the statements in the Offering Memorandum.

While the precise number of plaintiff class members is presently unknown, eighty-eight (88) individuals or entities  who purchased the JFF Notes in the defined class period filed proofs of claim against the Settling Defendants.  It  is clear that the number of putative class members exceeds these eighty-eight individuals.  (*See* R. 157,  Burke Aff. ¶ 12;  R. 150, Def. BAS's Br. 3 n.3.)  The median claim of the class members who filed claims against the Settling Defendants  is $250,000; a fourth of those class members have claims of less than $100,000.

The putative defendant class consists of approximately four investment banks that underwrote the Note Offering, including lead underwriter BAS.

### Proposed Class Definition

The proposed plaintiff class is defined as "all persons and entities who purchased Just for Feet, Inc. ("JFF") 11% Senior Subordinated Bonds, due 2009 (the "JFF Bonds"), between April 12, 1999, and November 3, 1999, and who have

suffered a loss."[3]  (R. 215, Pl.'s Mot. For Order Certifying Classes.)

## II. The Rule 23(a) Requirements

An action may be certified as a class action only if the named Plaintiffs have standing and satisfy first, the four express requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23 (a).[4]  In determining whether these requirements are met, the court must conduct a "rigorous analysis." *Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1362 (11th Cir.1984) (citing *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982).  Even so, the district court enjoys "broad discretion" in determining whether to certify a class.  *See, e.g., Armstrong v. Martin*

---

[3] Excluded from the Class are 1) Defendants, 2) members of the immediate families of Harold Ruttenberg and Randall L. Haines, 3) JFF, 4) any underwriter who participated in the JFF Note Offering, 5) divisions, affiliates, and subsidiaries of JFF, Defendant Deloitte & Touche LLP, Defendant BAS, and any member of the group of underwriters that participated in the offering of JFF Bonds, 6) any entity in which any Defendant has a controlling interest, and 7) the officers, directors, legal representatives, heirs, successors, and assigns of any such excluded Person.

[4] Rule 23 provides as follows:

> **Class Actions.**
> (a) Prerequisites to a Class Action.  One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a).

*Marietta Corp.,* 138 F.3d 1374, 1381 (11th Cir.1998); *Ross v. Bank S., N.A.*, 837 F.2d 980, 991 (11th Cir.1988); *Griffin v. Carlin,* 755 F.2d 1516, 1531 (11th Cir. 1985).

## A. Standing

The constitutional concept of "standing" requires the named Plaintiffs to show that they have a personal interest in the outcome of the litigation. This personal stake must exist at the commencement of the case.[5] If a claim of the named plaintiff is barred by the applicable statute of limitations, there is no personal stake and therefore the named plaintiff lacks standing to represent either herself or the putative class on that claim. *City of Hialeah v. Rojos*, 311 F.3d 1096, 1101 (11th Cir. 2002).

## B. Numerosity

The named representative must first show that it is extremely difficult or inconvenient to join all members of the class. The following illustrative factors may suggest the impracticality of joinder: 1) the size of the class, 2) the geographic

---

[5]   "[A]ny analysis of class certification must begin with the issue of standing . . .. Thus, the threshold question is whether the named plaintiffs have individual standing, in the constitutional sense, to raise certain issues. (citation omitted) Only after the court determines the issues for which the named plaintiffs have standing should it address the question whether the named plaintiffs have representative capacity, as defined by Rule 23(a), to assert the rights of others."

*Griffin v. Dugger,* 823 F.2d 1476, 1482 (11th Cir.1987).

dispersion of class members over multiple states, 3) difficulty in identifying class members, and 4) the inconvenience of trying individual lawsuits.  7A Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice  and Procedure* § 1762 (3d ed. 2005).

While Rule 23(a)(1) does not establish a minimal number, generally more than forty class members satisfies the numerosity requirement. *Cox v. Am. Cast Iron & Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)(quoting 3B James Wm. Moore *et al., Moore's Federal Practice* ¶ 23.05[1]n.7 (1978)); *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986); *Jack v. Am.  Linen Supply Co.,* 498 F.2d 122, 124 (5th Cir. 1974).  "[W]here the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983).

This Court has not found, and the parties have not cited, *any* class action in which there were fewer than five class members.

## C. Commonality

The commonality prong of Rule 23(a) is satisfied where "there are questions of law or fact common to the class."   Fed. R. Civ. P. 23 (a).  These common questions must be substantially related to the resolution of the case.  *See In re Polypropylene Carpet Antitrust Litig.,* 178 F.R.D. 603, 612 (N.D. Ga. 1997); *In re*

*Alexander Grant & Co. Litig.,* 110 F.R.D. 528, 532-34 (S.D. Fla. 1986). To satisfy the Rule 23(a)(2) commonality requirement, it is not necessary that *all* questions of law or fact be common; however, there must be at least one factual or legal issue affecting all of the class members. *See DeBoer v. Mellon Mortgage Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995); *Forbush v. J.C. Penny Co., Inc.,* 994 F.2d 1101, 1106 (5th Cir. 1993). Plaintiffs are only required to present evidence that the class claims are susceptible to classwide proof. *See Murray v. Auslander,* 244 F.3d 807, 811 (11th Cir. 2001).

The inherent legal and factual questions arising from the alleged existence of a single fraudulent scheme against many investors are illustrative  of the kind of common questions contemplated by the commonality requirement. *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir. 1987).

## D. Typicality

Rule 23(a)'s typicality requirement "refers to the individual characteristics of the named plaintiff in relation to the class." *Piazza v. EBSCO Indus., Inc.,* 273 F.3d 1341, 1346 (11th Cir. 2001). To show typicality, the named Plaintiffs must establish that their claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the putative class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir. 1984); *see Gonzales v. Cassidy,* 474 F.2d

9

67, 71 n.7 (5th Cir.1973);  *In re Med. Sys. Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996);

*Andrews v. AT&T,* 95 F.3d 1014, 1022-23 (11th Cir.1996).  Put another way, there

must be a nexus between the claims of the named plaintiffs and the common

questions which unite the class.

E. Adequacy

There are two prongs of the Rule 23(a)(4) adequacy requirement.  First, the

named plaintiff must be positioned to adequately and vigorously protect the interests

of the absent class members, and be free of antagonistic or collusive interests.

*Falcon, supra,* at 157 n.13;  *Andrews, supra,* 95 F.3d at 1023.  Second, class counsel

must be  competent and experienced in the litigation, and generally able to support

and manage the litigation.

III.  Rule 23(b)(3)'s Requirements

If the named Plaintiffs satisfy all of the requirements of Rule 23(a), they still

must meet the requirements of one of the three subsections of Rule 23(b).  Here, the

named Plaintiffs seek certification under Rule 23(b)(3), which has two components:

predominance and superiority.[6]  The key to certification of a class under Rule 23(b)(3)

---

[6]  Rule 23 (b)  provides as follows:
   **Class Actions Maintainable.**  An action may be maintained as a
   class action if the prerequisites of subdivision (a) are satisfied, and,

is whether the efficiency and economy of class adjudication outweighs the difficulties and complexity of individual adjudication. "As was stated by one court, 'The fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." 7AA Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1777 (3d ed. 2005)(quoting *Bennett v. Gravelle,* 323 F. Supp. 203, 218 (D.C. Md. 1971)).

## A. Predominance

The predominance component tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 621, (1997). Often, the predominance test is "readily met in . . . cases alleging consumer or securities fraud." *Amchem Prods.,* 521 U.S. at 625. Courts have fairly routinely certified noteholder class actions such as the one at bar. *See, Ross, supra,* 837 F.2d at 989-990.

## B. Superiority

To satisfy the superiority requirement of Rule 23(b)(3), the named plaintiff

---

in addition:
.....
(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23 (b).

must show that a class action is the fairest and best method of adjudicating the dispute. Fed. R. Civ. P. 23 (b) (3).   If another available method of handling the controversy is better suited than the class-action device, the class action should not be allowed to proceed. 7AA Charles Alan Wright, Arthur R. Miller, *et al.*, *Federal Practice and Procedure* § 1779 (3d ed. 2005)*.*  In determining the superiority *vel non* of a class action, the court  must consider four factors:

> (A) the interest of members of the class  in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23 (b)(3).

Our circuit has noted specifically that in securities fraud cases,  class actions are superior to other forms of adjudication.  *Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 725 (11th Cir. 1987).

## IV. Elements of  Securities Causes of Action

### A. Actions Under Section 12(a)(1)

Section 12(a)(1) of the 1933 Securities Act creates a cause of action for selling, or offering to sell, an unregistered security in interstate commerce.  15 U.S.C. §

77*l*(a)(1).  To establish a *prima facie* case  under this strict liability statute, a plaintiff must prove: 1) the sale, or offer to sell, of a security, 2) the absence of registration of the security with the SEC, and 3) use of the mails or other facilities of interstate commerce in making or attempting to make the sale.  *Swenson v. Engelstad,* 626 F.2d 421, 425 (5th Cir.1980).

Under 15 U.S.C. § 77*m*, claims for violations under section 12 of the Securities Act of 1933 must be brought within one year of the violation.  However, this time bar is subject to the "relation back" doctrine embodied in Rule 15(c)(2).  *Austin v. Loftsgaarden ,* 675 F.2d 168 (8th Cir.1982), *rev'd on other grounds, sub nom. Randall v. Loftsgaarden,* 478 U.S. 647 (1986); *Sweeney v. Keystone Provident Life Ins. Co.,* 578 F. Supp. 31 (D.C. Mass. 1983).

### B. Actions Under Section  12(a)(2)

Section 12(a)(2) of the Securities Act of 1933 creates a private cause of action against any person who offers or sells a security by means of a prospectus or oral communication which either contains an untrue statement of fact or omits a material fact necessary to make the other statements not misleading. 15 U.S.C. §77(*l*)(2).

Relying on *Ballay v. Legg Mason Wood Walker, Inc.,* 925 F.2d 682 (3d Cir. 1991), our  Circuit has squarely held that Section 12(a)(2) [formerly Section 12 (2)] does not apply to after-market  transactions. *First Union Disc. Brokerage Servs. v.*

*Milo*, 997 F.2d 835, 843-844 (11th Cir.1993).


## C. Actions Under Section 10(b) and Rule 10b-5

The  elements  of  a cause of action under § 10(b), 15 U.S.C §§ 78j(b), 78t(a) and SEC Rule 10b-5 are:  "(1) false representation of a material fact, (2) made with scienter, (3) upon which the plaintiff justifiably relied , (4) that proximately caused the plaintiff's damages." *Friedlander v. Troutman, Sanders, Lockerman & Ashmore,* 788 F.2d 1500, 1503, n.3 (11th Cir.1986) (quoting *Diamond v. Lamotte,* 709 F.2d 1419, 1422-23 (11th Cir.1983)).

The "fraud on the market" theory operates to create a rebuttable presumption of reliance as to "an investor who buys or sells securities at the price set by the market [since that investor] does so in reliance on that market.  *See, Basic, Inc. v. Levinson,* 485 U.S. 224, 247 (1988);  *Shores v. Sklar*, 647 F.2d 462 (5th Cir. May 26, 1981) (*en banc*).[7] To avail herself of that theory, a plaintiff must show, *inter alia,* that the securities were traded on an "efficient" market.  In  determination of the efficiency of a market, courts have considered the following "*Freeman /Cammer*" factors: 1) the security's trading volume, 2) the number of outstanding securities, 3) whether the

---

[7] Decisions of the Fifth Circuit handed down prior to November 1, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Pritchard,* 661 F.2d 1206, 1209 (11th Cir. 1981).

security had market makers, 4) whether the market price of a security reacted swiftly to publicly disseminated information, and 5) the eligibility of the company to file an SEC S-3 registration statement. *Freeman v. Laventhol & Horwath,* 915 F.3d 193 (6th Cir.1990); *Cammer v. Bloom;* 711 F.Supp. 1264 (D.N.J. 1989). A plaintiff is not required to show the existence of each of these factors. *Simpson v. Specialty Retail Concepts, Inc.,* 823 F.Supp. 353. 355 (M.D.N.C. 1993). [8]

The fraud on the market theory applies to trading in the secondary market. *See, Ross v. Bank S., N.A.,* 885 F.2d 723, 728-29 (11th Cir.1989); *Lipton v. Documation, Inc.,* 734 F.2d 740, 745-746 (11th Cir.1984).

### V.  Analysis

#### A. Standing and the Section 12 (a) (1) Claim

The  named  Plaintiffs'  Section  12(a)(1)  claim  was  first  asserted  in  the

---

[8] In *Klay v. Humana, Inc.,* 382 F.3d 1241 (11th Cir. 2004), the Eleventh Circuit extended the securities law "fraud on the market" rebuttable presumption of reliance to RICO class actions. *Klay,* 382 F.3d at 2158. There the court indicated that reliance may be presumed where the defendants' fraudulent conduct consisted of standardized misrepresentations. *Id.* In reaching its decision, the circuit was mindful of *Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 482 F.2d 880, 882 (5th Cir. 1973). In *Simon* the circuit declined to certify a class of investors because the plaintiff had failed to prove defendant made standardized representations. *Simon*, 482 F.2d at 882 (stating where "the writings contain material variations, emanate from several sources, or do not actually reach the subject investors, they are no more valid a basis for class certification than dissimilar oral representations").

November 14, 2002, Amended Complaint.  The original Complaint was filed on May 25, 2000. Even with the doctrine of "relation back," the named Plaintiffs' Section 12(a)(1) claim is time-barred.  This claim arose on April 12, 1999, when the named Plaintiffs purchased the JFF Notes.  Thus, Plaintiffs' Section 12(a)(1) claim had already expired when the original Complaint was filed.

It follows that the named Plaintiffs have no  personal stake in the litigation of the Section 12(a)(1) claim. They lack standing to represent either themselves or the putative class on that claim.  *City of Hialeah v. Rojos*, 311 F.3d 1096, 1101 (11th Cir. 2002).

A class cannot be certified on the Section 12(a)(1) claim.

### B. Standing and the Section 10(b) and Rule 10b-5 Claims

_____Defendant BAS does not contest the named Plaintiffs' standing as to their Section 10(b) and Rule 10b-5claims.  The Court so finds the named Plaintiffs have standing to assert these claims.

### C. The Section 12 (a) (2) Claim and Aftermarket Purchasers

As noted earlier, Section 12(a)(2) does not apply to aftermarket purchasers of securities. *First Union Disc. Brokerage Servs. v. Milo*, 997 F.2d 835, 843-844 (11th Cir. 1993).

Therefore, on the Section 12(a)(2) claim, while the named Plaintiffs may

represent a  subclass  of approximately 45 original purchasers of the JFF Notes,  they may not represent a subclass of aftermarket purchasers of the Notes.

## D. Satisfaction of Rule 23(a)'s Requirements

### 1. Numerosity

BAS contends that the named Plaintiffs have not satisfied the numerosity requirement.

With respect to the putative Plaintiff class, the Court finds that the named Plaintiffs have shown that the members of the class are so numerous that  joinder is impracticable.  Although the total number of class members has not been determined, the number of Plaintiff class members exceeds eighty.  The Plaintiff class members are widely dispersed throughout the United States. These findings compel the conclusion that the named Plaintiffs have carried their burden as to the putative Plaintiff class.

On the other hand, in their efforts to certify a Defendant class, the named Plaintiffs have utterly failed to satisfy  the numerosity requirement.  Four class members are simply insufficient to presume that joinder is impracticable. Moreover,  the named Defendants have indicated that they are unwilling to take on the mantle of  a Defendant class representative. Thus, the adequacy of

17

representation requirement is  unfilled.

## 2. Commonality

The named Plaintiffs have carried their burden of proof of Rule 23(a)

commonality.

Common questions include, without limitation, the following:

- Were the financial statements in the Offering Memorandum false and misleading?

- Did the Defendants' alleged false statements create the market for the Notes?

- Did the Notes trade on an open and efficient market?

- Did the Defendants' alleged false and misleading statements cause the Plaintiffs to suffer losses?

- Was JFF engaged in a fraudulent rebate scheme with Rogers Advertising Agency?

- Did BAS fail to conduct a due diligence inquiry before underwriting the JFF Notes?

- Did BAS know of JFF's alleged accounting irregularities, or was it severely reckless in failing to discover such irregularities, before allowing the Note Offering to proceed?

- Did BAS's failure to conduct a due diligence inquiry cause the Plaintiffs to suffer a loss?

Obviously, these questions are related to the resolution of the case, they

affect all class members, and they are susceptible to classwide proof.

BAS does not dispute that the named Plaintiffs satisfy the commonality requirement.

### 3. Typicality

BAS does  not dispute that the claims of the named Plaintiffs are typical of those of the class, and the Court so finds.

### 4. Adequacy

Again, BAS does  not dispute that the named Plaintiffs have satisfied the adequacy component of Rule 23(a). The Court so finds.

### E. Satisfaction of Rule 23(b)(3)'s Requirements

### 1. Predominance

### a. The Section 12(a)(2) Claim

BAS does not dispute the predominance of common issues on the Section 12 (a)(2) claim.

### b. The Section 10(b) and Rule 10b-5 Claims

For  purposes  of class certification, the named Plaintiffs have adduced sufficient evidence that the market for the JFF high yield bonds was informationally efficient.  It compares favorably with the efficiency of the market

for those high yield bonds included in the Fixed Income Pricing System ("FIPS")
of the National Association of Securities Dealers ("NASD"). The market for these
bonds was informationally efficient  notwithstanding that on some days the trading
volume was low and on others, there was no trading at all.[9]

After the initial offering of the JFF Notes, BAS served as one of the
marketmakers for the Notes.

Significantly, JFF was eligible to file an SEC S-3 Registration Statement.

The Court concludes that the named Plaintiffs have made a sufficient
showing of market efficiency to invoke the rebuttable presumption of reliance
under both the "fraud on the market" and the "fraud created the market" theories.

---

[9] The trading volume of the  JFF high yield bonds was not thin.  They traded on at least
75 of the 140 days between the initial offering and the Chapter 11 bankruptcy filing on
November 3, 1999. Excluding the first week of trading, the average daily trading amount of JFF
bonds was $3,245,107. (R. 157, 2d Joffe Aff., Ex. 3, Hotchkiss Decl.¶ 15.)   The total face
amount purchased by investors over the 140 days was $138,205,000, and the total sales were
$316,110,000. (*Id*. at ¶ 16.)

For the thirty-eight days in the class period in which there was at least one buy and one
sell transaction, the median realized spread was $0.22.  This fairly small spread indicates a liquid
and informationally efficient market for the JFF bonds. (*Id*. at ¶ 22.)

The efficiency of the market for the JFF Notes is reflected by the fact that the price of
JFF's Notes reacted immediately to JFF's disclosure of its inventory problems.  The price of
JFF's Notes fell approximately five points on May 25, 1999, the day following the release of
news regarding JFF's true inventory figures. The very next day, S&P lowered its rating of the
bonds.  Further, on July 28, 1999, the price of the Notes fell approximately 13 points following
JFF's announcement that it was amending its credit facility. Again, on the following day, the
rating of the bonds was downgraded. (R. 157, 2d Joffe Aff. at Ex. F, Bloomberg, *Just for Feet
Notes Plunge 22%, Investors Worry About Inventory,* Jul. 28, 1999.)

BAS does not deny that the named Plaintiffs have made the requisite showing of predominance of common issues on the other elements of a Section 10 (b) and Rule 10b-5 claim.

## 2. Superiority

A class action is the superior method for resolving the issues in this case.

As found earlier, common issues far outweigh any individual claims or defenses.

Aside from the named Plaintiffs, none of the putative class members have indicated an interest in individually controlling the prosecution of separate actions against BAS.

No other litigation concerning this controversy has been commenced by any of the putative class members. This forum is more desirable than any other because JFF has its principal place of business in the Northern District of Alabama. Additionally, the alleged wrongful conduct occurred in this district, and a large number of the documents and witnesses are in this district.

## VI.  Conclusion

By separate order, Plaintiffs' Motion for Class Certification will be GRANTED as to Plaintiffs' Section 10(b) and Rule 10b-5 claims.   Similarly, class certification

will be GRANTED with respect to the Section 12(a)(2) claims of a subclass of original

purchasers of the JFF Notes.

Class certification will be DENIED on the Section 12 (a) (1) claims, as well as

to the Section 12(a)(2) claims by a subclass of Plaintiffs who purchased the JFF Notes

in the secondary market.

Certification of a Defendant class will also be DENIED.

Done this 11th day of August, 2005.

_____
U.W. Clemon
Chief United States District Judge

22